MORTIMER JETER, administrator, plaintiff in error vs. E. BARNARD & COMPANY et al., defendants in error.

A bill in equity to marshal the assets of an estate, filed by an administrator, setting forth that the estate cannot pay all the claims upon it, that there are various creditors claiming preference in the distribution, (which claims are set forth in detail) and that other creditors dispute this priority, is properly filed, and is not demurrable for want of equity.

Equity. Administrator. Bill for Direction. Before Judge JOHNSON. Talbot Superior Court. September Term, 1870.

The following facts appear by the bill and amendments of Jeter, as administrator of Copeland: In 1860 Copeland died, intestate, leaving a large estate. · The widow administered, but her letters abated by her marrying. One Gamble became administrator de bonis non. The widow's second husband died, and she married Jeter in 1864. Gamble resigned, and Jeter became administrator, de bonis non, according to law.

The estate turned over to him by Gamble was a plantation and slaves, and the usual appurtenances of a farm, stock, etc. All the balance had been administered. Jeter worked the plantation for a year, hoping to raise a good crop and relieve the estate from embarrassment, but the seasons were bad, and when he filed the bill he anticipated a poor crop. The estate was appraised, in 1865, after emancipation of slavery, at $7,026 50. Intestate's estate owes at least $5,000, perhaps more. (The debts are specifically set out.) One Perryman claims a vendor's lien on said land for $1,500 00. Several judgments are liens on the land and debts; others are sued upon, and there are other demands not in suit. The complainant's wife has had her dower assigned out of said plantation, including the dwelling, and leaving but about five hundred acres of land, without buildings on them. She also claims that the estate owes her largely for commissions due her as such administratrix. Besides, while administra-

trix, she settled various claims against Copeland's estate by giving her notes, and did not claim them as payments in her returns. If she has these notes to pay she will claim that the estate shall repay her. Besides, these creditors gave no receipts, and may hold the estate bound.

Copeland left four children, three of them are minors, the other is an adult, but a lunatic. These children, by their next friend, have applied for a homestead in the lands not assigned as dower, and this application is now pending on the appeal. To defend all these claims will be expensive, troublesome and dangerous to the administrator.

The prayer was that the creditors be enjoined till the respective debts could be more fully ascertained and classified, with a view of marshaling said assets, that a master be appointed to examine them, and for direction and general relief.

Upon motion of a creditor this bill was dismissed for want of equity. That is assigned as error.

B. Hill, E. H. Worrill, for plaintiff in error.

Ingram & Crawford, for defendants.

McCay, J.

We do not see why the case made by this bill does not come entirely within the provision of section 3089 of the Revised Code. Here is an insolvent estate. Here are various creditors with conflicting claims, and the true amount due any one of them cannot be conclusively settled without settling, also, the claims of the others. It is replied, that this can be done at law; that the administrator may plead *plene administravit*, or *plene administravit præter*, and, under our law, may plead any fact, and that the jury may give such a verdict as will protect him.

In ordinary cases, this is true. As to the *amount* of any debts against the estate, the judgment of a Court will pro-

Jeter *vs.* Barnard & Company.

tect the administrator, but as to the *dignity* of any particular claim, as compared with other debts, the judgment, at law, would not bind the claiming creditor unless he were a party to the suit. The administrator might plead, for instance, in defense of any particular debt, that he had no assets, except such as were necessary to pay debts of higher dignity. On the trial, it might be found that certain claims which he set up in his plea, as of higher dignity than that of plaintiff's debt, then in suit, were not of higher dignity, and judgment might go against the administrator, charging him with the assets to pay the pending claim. But the outside creditor, not being a party, would not be bound by this judgment, and might still assert his claim against the administrator as of the highest dignity, and, perhaps, succeed, and thus the administrator be rendered unjustly liable to pay out more than he ever had, since the judgments would be both conclusive of assets.

We are clear, therefore, that, in cases of conflicting claims, especially if the contest be as to the relative *dignity* of the claims, it is very proper to bring all the parties before the Court.

In England, Courts of Equity assume jurisdiction in every case of an insolvent estate, and the administration of assets, of intestates' estates, in their largest branch of business: Roberts on Equity, 138; Hargroves on Equity, 29, 95, 107. Our more liberal rules of pleading at law do not require the interference of equity in many cases which, in England, would be clearly within the jurisdiction of Chancery.

But the case of conflicting claims and an insolvent estate is, in our judgment, clear, and we reverse the judgment.

Judgment reversed.